(NOT FOR PUBLICATION)                                          (Doc. No. 10)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| In re: : | |
| MEDFORD CROSSINGS NORTH LLC, : et al., : | |
| Debtors. : | |
| MEDFORD VILLAGE EAST : ASSOCIATES, LLC and : LAUREL PINES, LLC, : | Civil No. 11-5767 (RBK) |
| Appellants, : | **OPINION** |
| v. : | |
| MEDFORD CROSSINGS NORTH LLC, : et al., : | |
| Appellees/Debtors. : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on appeal by Medford Village East Associates, LLC ("MVE") and Laurel Pines, LLC ("Laurel") (collectively, "Appellants") from a decision by the United States Bankruptcy Court for the District of New Jersey to confirm the First Amended Plan of Liquidation of Medford Crossings North LLC et al.[1] ("Debtors" or "Appellees"). In conjunction with the instant appeal, Appellants have also filed a motion to supplement the record with additional documents. Because this Court finds that Bankruptcy Court's Order did not

---

[1] The Debtors/Appellees consist of the following entities: Medford Crossings North LLC; Medford Crossings South LLC; Purple Tree One LLC; Purple Tree Two LLC; Purple Tree Three LLC; Purple Tree Four LLC; Purple Tree Five LLC; Purple Tree Ten LLC; Purple Tree Investments LLC; FC Medford Residential LLC; Medford Crossings North Urban Renewal LLC; and Medford Crossings South Urban Renewal LLC.

1

adjudicate the claims at issue in Appellants' state-court action, the decision of the Bankruptcy Court to confirm the First Amended Plan of Liquidation is affirmed.  Moreover, the Court denies Appellants' motion to supplement the record, and instead judicially notices the papers with which Appellants sought to supplement the record.

I.	BACKGROUND

The Court does not rehash here the facts underlying this appeal, which are explained in detail in this Court's Opinion on Appellants' challenge to the settlement agreement in this case and are incorporated by reference herein.  See In re: Medford Crossings North LLC, 2012 U.S. Dist. LEXIS 12149 ("Feb.1, 2012 Op."), at *2-8 (D.N.J. Feb. 1, 2012).  The Court recapitulates only those facts relevant to the instant appeal of the Bankruptcy Court's Order Confirming Debtors' First Amended Plan of Liquidation ("Bankruptcy Court Confirmation Order").

On January 20, 2011, the Bankruptcy Court determined that the Debtors' Third Amended Plan of Reorganization could not be confirmed because the effect of its Third Party Releases and Injunction provision would be "[t]o deprive one non-debtor of its legal remedies against another non-debtor," such that "[t]he parties that would be restrained from proceeding against the Releasees [would] receive no meaningful distribution . . . and [would be] precluded from asserting their claims against the Releasees."  Bankruptcy Court Opinion Denying Confirmation of Third Amended Plan of Reorganization, Appellants' Br., Ex. 6, 7-8.  The Debtors subsequently proposed a Settlement Agreement that the Bankruptcy Court approved.  When the Bankruptcy Court's approval was challenged on appeal by MVE and Laurel, this Court found that MVE and Laurel did not have standing to challenge the Settlement Agreement because they did not meet the "aggrievement" requirement of bankruptcy standing, since the Bankruptcy Court made clear in proceedings related to the Settlement that it did not intend its order

confirming the Settlement Agreement to adjudicate Appellants' state-court claims.  Feb. 1, 2012 Op.

Soon after the Settlement Agreement was approved, the Debtors presented their First Amended Plan of Liquidation, which provided for the distribution of the Debtors' available cash, and the liquidation and distribution of any of the Debtors' remaining assets.  Appellants are the only objectors to the Bankruptcy Court's confirmation of the Liquidation Plan.[2]  Appellees' Br., 5.  At a hearing before the Bankruptcy Court concerning confirmation of the Liquidation Plan, MVE and Laurel explained to the Bankruptcy Court that "a major part of . . . our objection to confirmation [of the Liquidation Plan] is based upon our objection to the settlement.  We see the two as being bound up together."  Tr. June 28, 2011 Hearing, Appellants' Br., Ex. 4, 54.  Like the appeal of the Bankruptcy Court's Order confirming the Debtors' Settlement Agreement, then, the instant appeal focuses on whether or not the Bankruptcy Court's decision to confirm the Liquidation Plan actually affected the legal status of Appellants' potential claims against nondebtors in state court.  Just as it had in the proceedings concerning the Settlement Agreement, the Bankruptcy Court also indicated in hearings to confirm the Liquidation Plan that "I've made it clear . . . at many, many hearings, there's a separation between what goes on in State Court and the litigation that's going there that I am not considering, and whether the debtor has a right to go forward and confirm a plan of reorganization . . . ."  Tr. June 28, 2011 Hearing, 55-56.  Nevertheless, Appellants argue that the Bankruptcy Court improperly exercised jurisdiction over their state claims, and in so doing also violated the alternative dispute resolution and nonappealability provisions agreed upon in the litigation in state court.

---

[2] An objection to the confirmation of the Liquidation Plan was also filed by Lennar Homes, but, upon settling with the Debtors, Lennar withdrew its objection.

Appellants submitted documents to this Court in conjunction with this appeal that, Appellees argue, were not before the Bankruptcy Court and therefore should be stricken from the appellate record in this matter. Appellants have also filed a motion to supplement the record with a brief filed in state court on November 18, 2011 (after this appeal was filed and briefed). The Court also considers that motion here.

## II.     STANDARD

A District Court reviewing a decision of a Bankruptcy Court "review[s] the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof." In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). Whether the Bankruptcy Court has jurisdiction is an issue of law and is considered by this Court de novo. In re Resorts Int'l, Inc., 372 F.3d 154, 160 (3d Cir. 2004).

## III.    DISCUSSION

### A. Jurisdiction of the Bankruptcy Court to Confirm the Plan

Appellants argue that the Bankruptcy Court exceeded its jurisdiction not only in approving the Settlement Agreement (which, this Court has already ruled, Appellants do not have standing to challenge) but also in confirming the Liquidation Plan. As in their appeal of the Settlement Agreement, Appellants focus here on the effects that they fear the Bankruptcy Court's Order will have on their state-court claims, which they, as nondebtors, allegedly hold against other nondebtors. Accordingly, Appellants argue that the Bankruptcy Court has overstepped its jurisdictional boundaries and has ruled on Appellants' state-court claims, in precisely the manner recently prohibited by the United States Supreme Court in Stern v. Marshall, __ U.S. __, 131 S. Ct. 2594 (2011). There, the Supreme Court held that a bankruptcy court does not have jurisdiction over a claim "simply because a proceeding may have some bearing on a bankruptcy

4

case." Id. at 2618.  Rather, the Stern Court stated, "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."  Id.  Accordingly, Appellants argue as follows:

> The claims at issue on this appeal are claims by non debtor parties (MVE, Laurel and Samost) against other non debtor parties (principals of the Debtors) who have not sought protection under the Bankruptcy Code, as to which the Bankruptcy Court has asserted and continues to assert jurisdiction and has made and continues to make determinations."

Appellants' Br., 2.

Specifically, Appellants hone in on the Confirmation Order's Paragraph 16, which states that "[n]othing contained herein or in the Plan shall be deemed to stay or enjoin any state court proceedings, which assert claims directly against non-debtor parties."  Bankruptcy Court Confirmation Order, Ex. 1, Appellants' Br., ¶ 16.  Appellants argue that the Debtors and related entities ("Freeco") will argue in state court that the claims Appellants hold against them are "indirect" and therefore precluded by the confirmed Liquidation Plan, since that Plan only indicates that it does not stay or enjoin direct claims against nondebtor parties.  Appellant's Br., 15.  However, the language quoted by Appellants does not indicate that "indirect claims" against nondebtor parties may be stayed or enjoined; rather, the Plan simply does not address such claims.

Moreover, the transcript of the July 26, 2011 hearing concerning the Bankruptcy Court's Confirmation Order makes clear that the Bankruptcy Court did not make a determination as to which claims should be considered direct or indirect.  Tr. July 26, 2011 Hearing, Ex. 5, Appellant's Br., 33-34.  Specifically, counsel for Ripco Ventures (one of the Third Party Releasees established by the Settlement Agreement's "Mutual Release") indicated that "if the State Court needs guidance as to whether Mr. Samost has any direct claims, . . . then it should be . . . after it's fully briefed by the parties."  Id. at 33.  The Bankruptcy Court responded by

5

emphasizing that its Order "doesn't say anything about direct or indirect." Id. at 34.  And significantly, Mr. Boyer, counsel for Appellants, responded to Ripco Ventures's concern about direct or indirect claims by indicating that "[w]e're not asking for that ruling, Your Honor." Id.

Given that Appellants expressly informed the Bankruptcy Court that they did not wish the Bankruptcy Court to make a determination as to the nature of Appellants' claims in state court, it is difficult to understand why Appellants would now construe the Bankruptcy Court's failure to make such a determination as grounds for vacating or reversing the Confirmation Order.  It is even more difficult to understand upon reading the transcript of the proceedings in Bankruptcy Court, wherein the Bankruptcy Court suggested that it could come up with "some language that would give Mr. Boyer a little bit of comfort to be able to go ahead with <u>his claims that are direct claims of nondebtors against nondebtors</u>, which I think is what you're talking about, right, Mr. Boyer?" Tr. July 26, 2011 Hearing, 32-33 (emphasis added).  Mr. Boyer affirmed: "Correct. A[l]so—we're not seeking to pursue . . . claims against debtors, no." Id. at 33.  Clearly, Appellants informed the Bankruptcy Court that they sought to protect their potential direct claims against other nondebtors in state court, and the Bankruptcy Court's Order lucidly reflected that interest.

Now, Appellants' jurisdictional argument essentially appears to go as follows: by specifically indicating that its Order has no effect on directly held claims in state court, the Bankruptcy Court effectively held that its Order does have an effect on indirectly held claims.  This affects Appellants' claims, Appellants argue, because the state court may find that the Bankruptcy Court deemed them to be indirect.  Although this Court acknowledges Appellants' fear that Appellees will attempt to characterize Appellants' claims as "indirect" and use the Bankruptcy Court's Order to eliminate Appellants' claims, the fact is that the Bankruptcy Court

6

has not taken a position on the status of Appellants' state-court claims.  Therefore, insofar as Appellees will argue in state court that the Bankruptcy Court has already adjudicated Appellants' claims, Appellants have abundant evidence to the contrary in the record from the bankruptcy proceedings.  In fact, as explained above, the Bankruptcy Court explicitly indicates that it has not classified any claims as direct or indirect; accordingly, the Bankruptcy Court's Confirmation Order does not identify state-court claims that fall outside of Paragraph 16.  Moreover, the Bankruptcy Court has stated numerous times that it is not exercising jurisdiction over state claims, and that those claims are to be handled by the state court.  <u>See, e.g.</u>, Tr. June 28, 2011 Hearing, Ex. 4, Appellants' Br., 42 ("I've made it clear at least a dozen times that I have no intention of trying the State Court issues or anything that was decided by the State Court or will be decided by the State Court.").

  Strangely, despite these statements in the record, Appellants appear to be asking this Court to vacate the Bankruptcy Court's Order because the Bankruptcy Court should have affirmatively stated that its Order did <u>not</u> address Appellants' state-court claims.  That is, Appellants appear to be asking this Court to vacate the Bankruptcy Court's Order because, by not addressing the subject of Appellants' state-court claims, the Bankruptcy Court somehow exercised jurisdiction over them.  This Court disagrees.  Furthermore, the resolution proposed by Appellants—"having this Court clearly direct that . . . neither the confirmation Order nor the Order approving the settlement can be read to restrict th[e] claims" of MVE and Laurel against nondebtor parties—asks this Court to narrow language that the Bankruptcy Court appears to have deliberately drafted so that determination of the nature and status of claims filed in state court would be left to the state court.  The Court declines to do so.

### B. Summary Alternative Dispute Resolution Procedures and Non-Appealability Provisions in State-Court Litigation

Appellants further argue that the Bankruptcy Court erred in confirming the Liquidation Plan, because the Plan violated provisions of the state-court litigation that mandate alternative dispute resolution proceedings and nonappealability provisions. However, Appellants have failed to point to any instances wherein the Bankruptcy Court's Order specifically deals with a claim litigated in the state-court action. Moreover, as explained in Section III.A supra, the Bankruptcy Court made clear that it did not intend for its Order to adjudicate any claims filed in state court. Accordingly, this Court cannot find that the instant appeal or the bankruptcy proceedings underlying it violate the provisions of the state-court action.

### C. Motion to Supplement the Record

The Bankruptcy Rules indicate as follows: "The record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court." Fed. R. Bankr. P. 8006. Here, Appellants have moved to supplement the appellate record with motion papers in the state-court litigation that were filed on November 18, 2011 in state court ("November 18, 2011 Brief"). Doc. No. 10.

The Third Circuit has affirmed a district court's decision not to supplement the record where an "Appellant was unable to demonstrate that the evidence he sought to supplement the record with could not have been discovered during the bankruptcy proceedings . . . ." In re WebSci Techs., Inc., 234 Fed. Appx. 26, 31 (3d Cir. 2007) (citing Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991)). In the instant appeal, Appellants' counsel avers that "[t]he motion papers and the attached brief" that Appellants seek to add to the record "were not available at the

8

time the proceedings at issue were heard in the Bankruptcy Court, were not available when the record was designated for purposes of this appeal, and were not available when Appellants' Brief was submitted on November 2, 2011." Decl. of Peter Boyer, Mot. to Supp. Record, ¶ 3. However, this Court declines to extend an exception to Rule 8006—that an appellate record might be supplemented with information that was <u>undiscoverable</u> in the bankruptcy proceedings—to apply to documents that were <u>nonexistent</u> at the time of the bankruptcy court proceedings. To expand the exception in that way would be to make a bankruptcy court's orders subject to review based on any subsequent fallout.

Additionally, Appellants point out that, in general, a reviewing court has "the power to take judicial notice of subsequent developments in related cases," <u>Federal Ins. Co. v. Richard I. Rubin & Co.</u>, 12 F.3d 1270, 1284 (3d Cir. 1993). Appellees correctly note that a motion to supplement the record differs from a request for judicial notice, and the latter must meet the following standard: "[a] judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." <u>Selkridge v. United of Omaha Life Ins. Co.</u>, 360 F.3d 155, 164 (3d Cir. 2004) (quoting <u>Werner v. Werner</u>, 267 F.3d 288, 295 (3d Cir. 2001)). Because Appellants have presented this Court with case law concerning judicial notice (even though they have styled their request as a motion to supplement the record), and because Appellees have responded to Appellants' arguments, the Court will also consider the motion to supplement the record as a request for judicial notice.

Appellants seek judicial notice of Appellees' November 18, 2011 state-court brief to demonstrate that Appellees are, indeed, advancing in state court the argument that Appellants should be dismissed from the state-court action because "a full and final release of and from all

9

claims that relate in any manner to the Debtors and/or the Project" was obtained in the bankruptcy proceedings. State-Court Third-Party Defendants' November 18, 2011 Br., Appellants' Br. in Support of Motion to Supplement the Record, Ex. A, 17.  Appellees do not dispute the accuracy of the November 18, 2011 Brief, which Appellants append to their motion to supplement.  Moreover, this Court finds that there is no reason to question that the appended Brief, signed by counsel for the third-party defendants in that case, is authentic and accurate (making no comment, of course, on the accuracy of the contents thereof).  Accordingly, the Court will take judicial notice of the November 18, 2011 Brief.  However, the Court notes that the judicially noticed November 18, 2011 Brief has contributed little to this Court's review.  See Geriatrics Nursing Home v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home), 187 B.R. 128, 131 (D.N.J. 1995) ("Having reviewed the submissions in support of and in opposition to the motion, the Court is not convinced that supplementing the record will assist it in deciding this appeal.").  It is not unimaginable that Appellees would have attempted to proceed in state court as they have.  Furthermore, the fact that Appellees' submissions to the state court confirm Appellants' suspicions does not change this Court's decision that the Bankruptcy Court's Order is intentionally silent on how Appellants' state-court claims should be adjudicated, regardless of the arguments that Appellees choose to make before the state court.

     Appellees have also objected to Appellants' inclusion of documents in the record presented to this Court that were "submitted in opposition to the Order Approving Settlement, not to confirmation of the Plan."  Appellees' Opposition Br., 13. However, as Appellants point out, Appellees had requested that the Bankruptcy Court "take judicial notice of the docket in the case, including all the pleadings, documents, transcripts and the proceedings that have gone before." Tr. June 28, 2011, Appellants' Br., Ex. 4, 52.  Moreover, as Appellants point out, the

Bankruptcy Court's Confirmation Order explicitly indicates that it is "[b]ased on the evidence presented at the Confirmation Hearing and during the proceedings in these Chapter 11 cases . . . ." Confirmation Order, Appellants' Br., Ex. 1, ¶ I. The Court finds that, because the Settlement Agreement is a "proceeding[] in these Chapter 11 cases," it was considered by the Bankruptcy Court in its Confirmation Order. Accordingly, materials filed in the Bankruptcy Court in conjunction with the Settlement Agreement are not stricken from the record presented to this Court by Appellants.

Finally, Appellees ask that this Court strike from the record the brief and reply brief filed in conjunction with Appellants' appeal of the Bankruptcy Court's Order Approving Settlement, which this Court decided on February 1, 2012. Appellants do not appear to have responded to this request. Because the prior appeal constitutes a separate action, and the Bankruptcy Court clearly could not have seen or considered those papers when issuing the Confirmation Order as to the Liquidation Plan, the Court will strike those documents from the record in this appeal.

## IV.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order Confirming Debtors' First Amended Plan of Liquidation is **AFFIRMED**. Moreover, Appellants' motion to supplement the record is **DENIED**, but the Court takes judicial notice of the November 18, 2011 Brief appended to Appellants' motion to supplement. Briefs filed in conjunction with the appeal of the Bankruptcy Court's Order Approving Settlement, 11-cv-2583, are stricken from the record in this matter.

Date: 5/31/2012                                                   /s/ Robert B. Kugler
                                                                                           ROBERT B. KUGLER
                                                                                          United States District Judge